*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | | |
|---|---|---|
| *KAREN DEJOE,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *Docket No. 07-109-P-S* |
| | ) | |
| *UNUM LIFE INSURANCE COMPANY* | ) | |
| *OF AMERICA,* | ) | |
| | ) | |
| *Defendant* | ) | |

*RECOMMENDED DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT*

Both parties have moved for summary judgment in this action arising out of the plaintiff's receipt of benefits under a disability insurance policy issued by the defendant. I recommend that the court grant the plaintiff's motion and deny that of the defendant.

### I.  Summary Judgment Standards

### A.  Federal Rule of Civil Procedure 56

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004).  "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." *Rodríguez-Rivera v. Federico Trilla Reg'l Hosp. of Carolina*, __ F.3d __, 2008 WL 2600451 (1st Cir. July 2, 2008), at *2 (quoting *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008)).  "A fact is material if it has the potential of determining the

1

outcome of the litigation." *Id.* (quoting *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Santoni,* 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

"This framework is not altered by the presence of cross-motions for summary judgment." *Cochran v. Quest Software, Inc*., 328 F.3d 1, 6 (1st Cir. 2003). "[T]he court must mull each motion separately, drawing inferences against each movant in turn." *Id.* (citation omitted); *see also, e.g., Wightman v. Springfield Terminal Ry. Co*., 100 F.3d 228, 230 (1st Cir. 1996) ("Cross motions for summary judgment neither alter the basic Rule 56 standard, nor warrant the grant of summary judgment *per se.* Cross motions simply require us to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed. As always, we resolve all factual disputes and any competing, rational inferences in the light most favorable to the [nonmovant].") (citations omitted).

### B.  Local Rule 56

The evidence the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the Local Rules of this District.  *See* Loc. R. 56.  The moving party must first file a statement of material facts that it claims are not in dispute.  *See* Loc. R. 56(b).  Each fact must be set forth in a numbered paragraph and supported by a specific record citation.  *See id*.  The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]"  Loc. R. 56(c).  The nonmovant likewise must support each denial or qualification with an appropriate record citation.  *See id*.  The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation.  *See id*.  The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement.  *See* Loc. R. 56(d).  Again, each denial or qualification must be supported by an appropriate record citation.  *See id*.

Failure to comply with Local Rule 56 can result in serious consequences.  "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted."  Loc. R. 56(e).  In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact."  *Id*.; *see also, e.g., Cosme-Rosado v. Serrano-Rodriguez*, 360 F.3d 42, 45 (1st

3

Cir. 2004) ("We have consistently upheld the enforcement of [Puerto Rico's similar local] rule, noting repeatedly that parties ignore it at their peril and that failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted.") (citations and internal punctuation omitted).

## II.  Factual Background

The parties' respective statements of material facts and responses thereto submitted pursuant to this court's Local Rule 56 include the following undisputed material facts.

The plaintiff is a physician who was employed by Elliot Health Systems in Manchester, New Hampshire.  Plaintiff's Statement of Material Facts Pursuant to Rule 56 ("Plaintiff's SMF") (Docket No. 23) ¶ 1; Unum's Opposing Statement of Material Facts in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Unum's Motion for Summary Judgment ("Defendant's Responsive SMF") (Docket No. 25) ¶ 1.  Elliot Health Systems maintains a disability plan (the "Plan") governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*.  *Id*.  The plaintiff is a Plan participant and is covered under the Plan which was set forth, at least in part, in Unum Disability Policy No. 550821 (the "Policy").  *Id*. ¶¶ 1-2.  The defendant is the claims fiduciary for the Plan.  *Id*. ¶ 3.

The plaintiff suffers from multiple sclerosis.  *Id*. ¶ 4.  She stopped working in April 2001 and submitted a disability claim to the defendant.  *Id*. ¶ 5.  The defendant determined that the plaintiff was fully disabled as of January 29, 2002.  *Id*. ¶ 6.  By letter dated September 18, 2002, Unum approved long-term disability benefits for the plaintiff beginning July 31, 2002.  *Id*. ¶ 7.  When the plaintiff began receiving benefits under the Policy, the written Policy did not include a provision for reduction of benefits due to receipt of Social Security payments.  *Id*. ¶ 8.

4

The plaintiff applied for benefits under the Social Security Act. *Id.* ¶ 10. On April 18, 2003, the Social Security Administration notified the plaintiff that it had determined that she was disabled under its rules as of January 28, 2002, and that she was entitled to monthly disability benefits beginning in July 2002. *Id.* ¶ 11. On May 22, 2003, the plaintiff faxed her Social Security Notice of Award to Unum employee Michael Horton. *Id.* ¶ 12. On September 23, 2003, Horton discovered that the plaintiff had been receiving Social Security benefits and that Unum had not been offsetting those benefits against its payments to the plaintiff under the Plan. *Id.* ¶ 13. Later that day, he noted that "SS is not an offset per contract." *Id.* On October 14, 2003, the defendant sent a letter to the plaintiff stating as follows:

> As you may be aware, the disability policy under which you receive disability benefits provides for a reduction of your monthly benefit by any Social Security benefits paid for the same period.
>
> Since you were awarded Primary Social Security benefits on 07/31/2002, for a period during which you received unreduced disability benefits, your claim is now overpaid in the amount of $20,060.00.

*Id.* ¶ 15. The letter requested payment of the $20,060 by November 14, 2003 and stated that the plaintiff's monthly benefit was now $4,185 (reduced from $7,500). *Id.* ¶ 16.

On November 26, 2003, the plaintiff, through an attorney, asked for a copy of the Policy and the non-medical portion of her file. *Id.* ¶ 18. She also asked that the defendant identify the language under which it claimed that there had been an overpayment and the basis for the reduction of her benefits. *Id.* Unum did not respond to this letter. *Id.* On December 3, 2003, the plaintiff was still disabled under the terms of the Policy. *Id.* ¶ 19. On that date, Unum issued Policy Amendment No. 7 which added Social Security payments as a deductible source of income under the Policy. *Id.* ¶ 20. The effective date of the amendment was July 1, 2000. *Id.* ¶ 22. The defendant began to reduce the plaintiff's long-term disability benefit and, by March

5

31, 2004, had recovered the full amount of the claimed overpayment. *Id*. ¶ 24. In August 2006, the defendant began to pursue a further reduction of the plaintiff's long-term disability benefits based on an award of family Social Security benefits. *Id*. ¶ 25. On September 26, 2006, the defendant sent the plaintiff a letter asking for a copy of her dependent Family Social Security Notice of Award. *Id*. ¶ 26. On October 17, 2006, the plaintiff faxed a copy of this document to the defendant. *Id*. ¶ 27.

On October 20, 2006, the defendant discovered that the original October 14, 2003 offset calculation for the plaintiff's primary Social Security disability benefit was incorrect. *Id*. ¶ 28. In a letter dated October 20, 2006, the defendant informed the plaintiff that her long-term disability benefits had been overpaid in the amount of $36,580 based on the award of family Social Security benefits. *Id*. ¶ 29. By letter dated February 23, 2007 and supplemented on March 6, 2007, the plaintiff appealed Unum's decision to reduce her disability benefits by the amounts she received for primary and family Social Security benefits. *Id*. ¶ 30.

On March 26, 2007, the defendant rendered its decision on this claim; it determined that primary and family Social Security benefits received before December 3, 2003, the date of the Policy amendment, were not subject to the offset. *Id*. ¶ 31. On March 30, 2007, the plaintiff requested clarification of the defendant's March 26, 2007 determination refusing to reimburse her for Social Security offsets made after December 3, 2003. *Id*. ¶ 33. On April 11, 2007, the defendant notified the plaintiff that it would not change its March 26, 2007 decision. *Id*. ¶ 34. At all relevant times, the plaintiff continued to be disabled under the terms of the Plan. *Id*. ¶ 35. She has exhausted all administrative remedies available under the Plan. *Id*. ¶ 36.

Optima Health, Inc. purchased disability insurance for its employees from the defendant beginning in 1991. Defendant's Statement of Material Facts ("Defendant's SMF") (Docket No.

16) ¶ 4; Plaintiff's Supplemental Statements of Material Fact and Response to Defendant's Statement of Fact in Support of Its Motion for Summary Judgment ("Plaintiff's Responsive SMF") (Docket No. 27) ¶ 4.  Optima owned two hospitals, one of which was Elliot Hospital, and each was a division covered under the Optima policy.  *Id.*  Optima's long-term disability insurance policy with the defendant was policy number 501179.  *Id.* ¶ 5.  This policy contained a common provision in group long-term disability insurance that allowed the defendant to offset receipt of primary and family Social Security disability benefits against the defendant's long-term disability benefits.  *Id.* ¶ 6.

The plaintiff has been employed at Elliot Hospital since March 1, 1998 and therefore would have been insured under policy number 501179.  *Id.* ¶ 8.  By letter dated April 6, 2000, on Elliot Hospital letterhead from Walter H. Culver, CLU, director of employee benefits, to Karin Taylor, Unum sales consultant, Elliot requested "the termination of our current policy (Group Policy No. 501179) effective June 30, 2000 and the issuance of a new policy effective July 1, 2000 with identical coverages and terms."  *Id.* ¶ 12.  In the process of pricing the new policy for Elliot Hospital, Unum employees "mirrored" the Optima plan and emphasized that no significant changes would be made, such as eliminating the Social Security offset provision, which would have a significant impact on the policy price.  *Id.* ¶ 14.  The new Elliot Hospital policy, number 550821, was effective July 1, 2000.  *Id.* ¶ 15.  As the policy moved through the defendant's departments, its employees continued to note the intent to mirror the Optima plan.  *Id.* ¶ 17.  For some unknown reason, the "final Master Contract" that was printed for this policy did not include the Social Security offset provision that was in the predecessor Optima plan.  *Id.* ¶ 21.

On September 23, 2003, the defendant's account consultant Tammy Pelletier e-mailed the defendant's underwriting consultant Holly Richio, stating:

> [W]e recently discovered that the Elliot Health System's disability contract has an error in it.  EHS was part of Optima Health (former UnumProvident client) along with Catholic Medical Center.  Back in 2000 the hospitals split up and we wrote separate policies for EHS and CMC.  The policies were supposed to mirror the prior Optima Health plan (which again was written with UnumProvident).  Apparently, information in the contract was not mirrored as the Elliot Health System contract does not include 2 sections of Deductible Sources of Income (specifically SSDI offsets).
>
> * * *
>
> We will need to get the contract updated to accurately reflect the original intent which was to "mirror the prior Optima Health contact." Unfortunately, this means going back to July, 2000 with this change so the original contract reflects deductible sources of income accurately.  In addition, we will need to re-issue the 5 amendments that have been processed on this policy since its inception.

*Id*. ¶ 32.  Richio responded on September 25, 2003, stating that she approved this course of action "as this should have been in the contract since the initial re-write!"  *Id*. ¶ 33.

On October 7, 2003, Unum customer care specialist Sandra Morin documented her conversation with the account manager for the Elliot Hospital account.  *Id*. ¶ 35.  Her note states:

> Per Account Manager: As you know, the claim you currently have for EHS below has not had the SSDI offset to date.  I understand that this was due to the fact that the contract did not list SSDI as a deductible source of income.  However, this should have been a part of the contract. At this time, we are retroactively making the change to reflect this as a deductible source of income.

*Id*.  Morin then called the plaintiff "to advise that we will begin offsetting for SSDI as it should have been written into the contract.  Starting with next check benefits will be reduced and also we will be referring file to F[inancial] R[ecovery] U[nit] ["FRU"] to review any overpayments and best way to recoup."  *Id*. ¶ 36.  Morin referred the overpayment to FRU.  *Id*. ¶ 37.

On October 10, 2003, Unum contract specialist Rick Nickerson submitted a "Request for "Customization/Single Case Language" to restore the Social Security offset to the Elliot Hospital policy.  *Id*. ¶¶ 38-39.  On December 3, 2002, he noted that the defendant had "[c]ompleted

8

processing and customizing this correction for Social Security [i]ntegration[,]" which became Amendment #7 to the Policy with an effective date of July 1, 2000. *Id*. ¶¶ 41-42.

By letter dated November 15, 2006, the plaintiff's attorney informed the defendant that the plaintiff disputed the "decision to reduce the benefit." *Id*. ¶ 43. The attorney sent the defendant another letter, dated February 23, 2007, formally objecting to the 2003 decision to offset the plaintiff's disability benefits by the amount of Social Security benefits she received. *Id*. ¶ 44. By letter dated February 26, 2007, the defendant informed the plaintiff's attorney that his letter had been referred to the defendant's appeals consultant for review. *Id*. ¶ 45. The exchange of letters dated March 26, 2007 and March 30, 2007 described above, *supra* at 6, followed.

### III. Discussion

The complaint alleges, in a single count, that the defendant violated ERISA when it refused to pay the plaintiff "the full amount of the disability benefits due" under the terms of the Plan as it existed when she first qualified for benefits. Complaint (Docket No. 1) ¶¶ 28-38. The defendant contends that it had discretion under ERISA to amend the Plan retroactively because welfare benefits do not vest in recipients and, in the alternative, that equitable considerations require reformation of the insurance contract to correct its mistake. Defendant's Motion for Summary Judgment ("Defendant's Motion") (Docket No. 15) at 12-18. The plaintiff asserts that the defendant had an "improper bias" which voided its discretionary authority as a matter of law, that her benefits were in fact vested, that language of the policy itself prohibited any reduction in benefits paid to a beneficiary, and that the defendant's actions were arbitrary and capricious. Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") (Docket No. 22) at 8-17.

The parties appear to agree that benefits payable under welfare benefit plans, like the one at issue here, do not vest under ERISA.  Defendant's Motion at 12; Plaintiff's Motion at 11.  *See Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995).  The plaintiff contends that the terms of the Plan in this case nonetheless provide her with vested welfare benefits that cannot be changed by the plan sponsor unilaterally.  Plaintiff's Motion at 11.  ERISA allows a welfare benefit plan to include such a provision.  *Inter-Modal Rail Employees Ass'n v. Atchison, Topeka & Santa Fe Ry.*, 520 U.S. 510, 515 (1997); *see generally Balestracci v. NSTAR Elec. & Gas Corp.*, 449 F.3d 224, 230 (1st Cir. 2006).  She identifies the following Plan language as the source of this vesting:

> Unum will provide coverage for a payable claim which occurs while you are covered under the policy or plan.
>
> * * *
>
> Any decrease in coverage will take effect immediately but will not affect a **payable claim** that occurs prior to the decrease.

Plaintiff's Motion at 13; UnumProvident Group Insurance Policy No. 550821 001 ("Policy") (Docket No. 21) at UACL00548 (emphasis in original).[1]  The plaintiff construes this language as a statement "that no coverage decrease can affect a 'payable claim' for which Unum is liable under the terms of the Policy.  The Policy vests the benefits of those who have been determined to be disabled."  *Id.*  According to the plaintiff, Policy Amendment No. 7's provision to the effect that it is retroactively effective beginning on July 1, 2000, is impermissible because it "render[s] meaningless the provisions of the Policy that explicitly preserve Plaintiff's right to benefits as they existed at the time she was entitled to receive them."  *Id.* at 14.  In addition, she asserts, when performance is due under the terms of any contract, a later retroactive modification

---

[1] The plaintiff cites to this policy using the Bates stamp numbers assigned to the copy of the policy that is included in the defendant's claim file, a document that has been sealed by the court on the unopposed motion of the defendant.  I will cite only to the copy of the policy that was submitted with the summary judgment materials, which is not sealed.  The Bates stamp numbers on this copy differ from those on the copy in the claim file.

can have no effect on a beneficiary's claim to benefits under that contract.  *Id*. at 12.  In support of the latter contention, she cites *Members Servs. Life Ins. Co. v. American Nat'l Bank & Trust Co.*, 130 F.3d 950, 956 (10th Cir. 1997), *Blackshear v. Reliance Standard Life Ins. Co.*, 509 F.3d 634, 641 (4th Cir. 2007), and *Filipowicz v. American Stores Benefit Plans Comm.*, 56 F.3d 807, 815 (7th Cir. 1995).  In support of the former argument, she cites no authority.

With respect to the latter argument, the cases cited by the plaintiff do not involve disability benefit plans.  Each opinion is carefully limited to its facts.  Two deal with life insurance policies, the third with medical insurance.  *Members Servs.,* 130 F.3d at 952; *Blackshear*, 509 F.3d at 636; *Filipowicz*, 56 F.3d at 810.  That is the initial critical distinction between these cases and the one at hand.  An insured life can only end once; the event giving rise to a specific benefit occurs only once.  While the condition of death continues, the entitlement to benefits under the life insurance policy does not.  A single payment becomes due at the time of death.  To use the plaintiff's words, that is when the insurer's performance "became due."  *See Members Servs*., 130 F.3d at 957.  Similarly, the medical expenses for which payment is due occur once and do not continue indefinitely.

By contrast, a disabled individual could recover sufficiently to return to work.  The disability policy entitles a beneficiary to periodic payments that, by its terms, may be adjusted at various times.  Even in *Members Servs*., where the court found that allowing the insurer to recoup payments made for medical expenses before the amendment of the policy at issue was barred under general contract law, that ruling applied only to payments made before the date of the amendment; it did not bar a reduction in payments thereafter.  130 F.3d at 957.  Here, the defendant has reimbursed the plaintiff for amounts withheld to account for a reduction in benefits before the date of Policy Amendment No. 7.  Under *Members Servs*., nothing more is required.

11

Tellingly, the Tenth Circuit, which decided *Members Servs.* in 1997, held in 2004 that a policy amendment reducing the period in which disability benefits would be paid for certain disabilities, including the one afflicting the plaintiff, from 60 months to 24 months, could be applied retroactively to the plaintiff given the fact that the plan advised that it could be changed "in whole or in part."  *Welch v. Unum Life Ins. Co. of Am.*, 382 F.3d 1078, 1086 (10th Cir. 2004). The Plan in this case contains the same statement.  Policy at UACL00564.  The Tenth Circuit in *Welch* did not, however, reach the argument made by the plaintiff, as made by the plaintiff here, that the following language creates a vested interest in the unamended term of the original policy: "[a]ny decrease in coverage will take effect immediately but will not affect a payable claim that occurs prior to the decrease."  382 F.3d at 1086 n.1.   The defendant makes much of the fact that there was no "scrivener's error" in the *Welch* case, Defendant's Opposition to Plaintiff's Motion for Summary Judgment (Docket No. 24) at 7-8, but that is not a determinative difference, given that the Tenth Circuit specifically declined to construe the language on which the plaintiff relies in the instant case.

This leads directly to consideration of the plaintiff's first argument: that the language of the policy, as it existed before Policy Amendment No. 7 was issued, created a vested right to recover the amount of benefits that the plaintiff was receiving under the policy before the amendment.  This construction of the contract language appears to conflict with the defendant's statement on the first page of the policy that it may be changed in whole or in part at any time. In addition, it is an accurate reading only if the word "coverage" is construed to mean the amount of benefits being paid to a particular beneficiary.   Neither party points to any definition of the word "coverage" in the Policy.  While my predisposition would be that the usual meaning of the word "coverage" is not limited to the amount paid, the context in which the word is used in the

Policy persuades me that the two concepts are the same for purposes of this case. The assertion in the policy that "[a]ny decrease in coverage will take effect immediately but will not affect a **payable claim** that occurs prior to the decrease" directly follows this language:

> Once your coverage begins, any increased or additional coverage due to a change in your weekly/monthly earnings or due to a plan change requested by your Employer will take effect immediately if you are in active employment or if you are on a covered layoff or leave of absence. If you are not in active employment due to injury or sickness, any increased or additional coverage will begin on the date you return to active employment.

Policy at UACL00548. Any "coverage" that can change "due to a change in your weekly/monthly earnings" can only be the amount of the weekly or monthly payment to which the beneficiary is entitled when he or she becomes disabled. I have read the full policy and see no other way to construe this language. Thus, decreasing the amount of the periodic benefits paid to the plaintiff after a policy amendment constituted a decrease in coverage, which by the policy terms could not affect the plaintiff's payable claim that occurred prior to the decrease.

Disability insurance policies that are governed by ERISA are nonetheless subject to the state-law doctrine of *contra proferentem*, that ambiguities are to be construed against the insurer. *Billings v. Unum Life Ins. Co. of Am.*, 459 F.3d 1088, 1093 (11th Cir. 2006). Maine state law so provides. *Jipson v. Liberty Mut. Fire Ins. Co.*, 2008 ME 57, ¶ 10, 942 A.2d 1213, 1217. Accordingly, to the extent that the statement on the first page of the policy, that it may be amended at any time, conflicts with the specific language discussed above, the resulting ambiguity must be construed against the defendant. *See also Hawkins-Dean v. Metropolitan Life Ins. Co.*, 514 F.Supp.2d 1197, 1199-1200 (C.D.Cal. 2007).

The defendant argues that there is nothing arbitrary or unreasonable about its decision to apply the offset provision re-inserted into the policy by Policy Amendment No. 7. Defendant's

Motion at 11.  But it cannot have been a reasonable exercise of the defendant's discretion to act, however inadvertently, in violation of policy language that protected the plaintiff from any decrease in the amount of her benefit payment once her claim had been approved.  The defendant contends in this context that the "coverage" to which the passage at issue refers is only the "coverage" that it and the plaintiff's employer intended to provide, rather than that which the Policy actually provided.  *Id*. at 14-15.  This is an ingenious argument, but it fails, not only because the defendant cites no authority in support of it, but also because the governing language of the Policy is that which appears in the Policy until it is changed.  The defendant contends that this interpretation would prevent insurers from correcting errors in policy language, but it does nothing of the sort.  If this language is included in the policy, it simply prevents corrections from decreasing the amount of a beneficiary's existing periodic benefits payments.  An insurer could always leave this language out of its policies.  And, in any event, beneficiaries who became eligible for benefits only after the correction was made would receive only the lesser benefits.

In the alternative, the defendant argues that the court should equitably reform the Policy from its inception "to conform to the true terms of the plan as established by Elliot."  *Id*. at 15-18.  In response, the plaintiff contends, first, that the defendant may not rely on evidence from its underwriting file (apparently the only source of evidence that the defendant and the plaintiff's employer intended the Policy to include the Social Security offset), and, second, that reformation of the contract is not available under the circumstances of this case.  Plaintiff's Opposition to Unum's Motion for Summary Judgment ("Plaintiff's Opposition") (Docket No. 26) at 1-10.  Traditional equitable remedies are compatible with ERISA.  *Kwatcher v. Massachusetts Serv. Employees Pension Fund*, 879 F.2d 957, 966 (1st Cir. 1989) (restitution).  I do not find it

necessary to reach the first contention because, even if the challenged evidence is admitted, I conclude that the defendant is not entitled to reformation of the Policy.

To be entitled to reformation of a contract, a party must establish that the undisputed material facts clearly show a mutual mistake by the contracting parties. *OneBeacon Am. Ins. Co. v. Travelers Indem. Co.*, 465 F.3d 38, 41 (1st Cir. 2006) (Massachusetts law). Maine law is the same. *Yaffie v. Lawyers Title Ins. Corp.*, 1998 ME 77, ¶ 8, 710 A.2d 886, 888. A scrivener's error is the "classic case" of such a mutual mistake. *OneBeacon*, 465 F.3d at 41. Even when such proof is submitted, however, the remedy of reformation may not be available where the rights of third-parties will be unfairly affected. *Id.* at 42. This is such a case. The plaintiff's right to receive disability benefits free of any Social Security offsets, which I have already found to be vested by the language of the Policy, would be unfairly affected by the reformation sought by the defendant. The defendant argues that the plaintiff did not "detrimentally rel[y]" on the Policy with the incorrect omission of the Social Security offset, Defendant's Motion at 16-17, but that is not the appropriate legal test. All she needs to show is that the reformation would unfairly affect her rights. She has made that showing here.

The defendant makes no other substantive arguments in its motion for summary judgment, which should accordingly be denied.

Because language in the Policy as it existed when the plaintiff's claim was approved, and even after Policy Amendment No. 7 took effect, protected the plaintiff against any reduction in the amount of her periodic benefit payment, the defendant's offset of the plaintiff's individual and family Social Security benefits against the payment she had been receiving before December 3, 2003 can only be characterized as arbitrary and capricious. *Morales-Alejandro v. Medical*

*Card Sys., Inc.*, 486 F.3d 693, 698 (1st Cir. 2007) (discussing arbitrary and capricious standard in a disability benefits case).  The plaintiff's motion for summary judgment should be granted.

### IV.  Conclusion

For the foregoing reasons, I recommend that the defendant's motion for summary judgment (Docket No. 15) be **DENIED** and that the plaintiff's motion for summary judgment (Docket No. 22) be **GRANTED**.


### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.   A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*


Dated this 28th day of July, 2008.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge